# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONALD CATO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-CV-011-GKF-PJC |
| ) | |
| BRISTOW RUBBER RECYCLING, LLC, ) | |
| a foreign corporation, and ) | |
| CONTINENTAL CONVEYOR (ONTARIO) LTD., ) | |
| a/k/a CONTINENTAL CONVEYOR CO. OF ) | |
| NAPANEE, LTD., a foreign corporation, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter comes before the court on the Motion for Summary Judgment (Dkt. #23) of defendant Continental Conveyor (Ontario) Ltd. ("Continental").

### I. Background

On January 11, 2008, plaintiff Daniel Cato ("Mr. Cato") was seriously injured while operating a conveyor system at a facility owned by defendant Bristow Rubber Recycling, LLC ("Bristow Rubber"). The conveyor system involved in the incident was manufactured by Continental. Mr. Cato filed this personal injury action claiming diversity as a basis for federal jurisdiction. The issue raised in the Motion for Summary Judgment is whether this court has personal jurisdiction over Continental.

## II. Undisputed Material Facts

In 1998, Continental, a Canadian corporation, sold the conveyor involved in Mr. Cato's injury to National Rubber Industries ("NRI"), a corporation in Flat Rock, Michigan. Continental designed and manufactured the conveyor according to NRI's specifications. The conveyor was designed and manufactured to be anchored to NRI's plant floor with bolts and to serve as a permanent and immovable fixture in the plant. The conveyor was initially equipped with several safety features, including guards and "kill" switches. Between NRI's original purchase and the date of Mr. Cato's injury the conveyor was modified, and some of the original safety features were removed. In March of 2003, Bristow Rubber purchased the conveyor from NRI. Continental had no knowledge of this sale.

In 2005, Continental sold a separate conveyor system to Lafarge Cement Company ("Lafarge") in Tulsa, Oklahoma. Continental manufactured the conveyor according to Lafarge's specifications and shipped it to Lafarge. Following the 2005 sale, Continental shipped replacement parts to Lafarge on a few separate occasions, most recently in 2008. Continental has never authorized any of its employees or agents to come to Oklahoma to inspect or repair the Lafarge conveyor.

Other than the sale of the Lafarge conveyor and replacement parts, Continental has never authorized any person, business, or distributor, to sell, deliver, install, or service any equipment in Oklahoma on its behalf. Continental does not own or lease any property in Oklahoma or maintain any place of business in the state. Continental has never had any bank accounts, telephone listings, or addresses in Oklahoma. None of Continental's employees have ever resided in or maintained an office in Oklahoma.

Continental maintains a website (continentalconveyor.ca), which is informational in nature. Continental has advertised in Canadian trade publications but has not engaged in advertising targeted specifically at Oklahoma.

Prior to this action, Continental had never been a party to any legal, administrative, regulatory, or agency actions in Oklahoma and has never been subjected to the jurisdiction of an Oklahoma court.

### III. Personal Jurisdiction

Summary judgment is appropriate if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must examine the factual record in the light most favorable to the nonmoving party. *Kannady v. City of Kiowa*, 590 F.3d 1161, 1168 (10th Cir. 2010). When personal jurisdiction is challenged on the basis of the complaint and affidavits, the plaintiff "need only make a *prima facie* showing of personal jurisdiction." *Dudnikov v. Chalk & Vermilion Fine Arts Inc.,* 514 F.3d 1063, 1070 (10th Cir. 2008) (citations omitted).

"The test for exercising long-arm jurisdiction in Oklahoma is to determine first whether the exercise of jurisdiction is authorized by statute and, if so, whether such exercise of jurisdiction is consistent with constitutional requirements of due process." *Yabrough v. Elmer Bunker & Assoc.*, 669 F.2d 614, 616 (10th Cir. 1982) (quoting *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1385-86 (10th Cir. 1980). "In Oklahoma, this two-part inquiry collapses into a single due process analysis, as the current Oklahoma long-arm statute provides that '[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the

3

United States.'" *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988) (citing 12 O.S. § 2004). Under the Due Process Clause, a court may exercise personal jurisdiction over a nonresident defendant if the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). "The sufficiency of a defendant's contacts must be evaluated by examining the defendant's conduct and connections with the forum state to assess whether the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'" *Rambo,* 839 F.2d at 1417 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

To satisfy the minimum contacts standard, a plaintiff may demonstrate that the defendant is subject to either "specific jurisdiction" (in which case personal jurisdiction is based on specific activities or contacts the defendant had with the forum state), or "general jurisdiction" (in which case jurisdiction is based upon "continuous or systematic contacts" between the defendant and the forum state). *U.S. v. Botefuhr*, 309 F.3d 1263, 1271-72 (10th Cir. 2002) (citations omitted). Mr. Cato asserts that Continental is subject to both specific and general jurisdiction.

## A. Specific Jurisdiction

Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, the "minimum contacts" standard requires first, that the out-of-state defendant must have "'purposefully directed [its] activities at residents of the forum, and [second,] the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted); *Dudnikov*, 514 F.3d at 1071.

4

"While these elements afford some shape to the due process inquiry, each is, as we shall see, not without its own interpretative difficulties." *Dudnikov*, 514 F.3d at 1071.

Mr. Cato's first argument is based on the "stream of commerce theory." He argues that Continental "purposefully availed itself of United States markets with the reasonable expectation that its products will enter interstate commerce." (Dkt. #33, p.6). Mr. Cato's focus on the "United States market" is misplaced, however, because the Supreme Court requires that the defendant "'purposefully avail itself of the privilege of conducting activities within the forum *State*.'" *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) (emphasis added) (citing *Hanson*, 357 U.S. at 253). When the defendant does so, "it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State." *Id.* Therefore, "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297-98 (citing *Gray v. Am. Radiator & Standard Sanitary Corp.*, 176 N.E.2d 761 (Ill. 1961)). The critical analysis is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297 (citations omitted).

Mr. Cato contends this case is most analogous to *Winston Industries, Inc. v. The District Court of Oklahoma County*, 560 P.2d 572 (Okla. 1977). In *Winston*, the defendant manufactured and distributed mobile homes "for sale to and use by the general public as consumers of mobile homes." *Id.* at 573. The Oklahoma Supreme Court adopted a ground for assuming jurisdiction articulated in *Metal-Matic, Inc. v. Eighth Judicial District Court*, 415 P.2d 617 (Nev.1966), a case

involving a Minnesota manufacturer of a boat railing that allegedly collapsed and caused a decedent to drown in Nevada. *Id.* at 573. The court in *Metal-Matic* said:

> a manufacturer of a component part of a boat can presume or reasonably foresee that its potential market would be Lake Mead or Lake Tahoe, in Nevada, as well as the lake areas of Minnesota, Wisconsin, Michigan, or in any other part of the United States where navigable lakes or waters are located.

*Id.* (citing *Metal-Matic*, 415 P.2d at 618-19). The Oklahoma Supreme Court concluded that "under the Oklahoma long-arm statutes Oklahoma may acquire jurisdiction over a foreign manufacturer of a product which it reasonably may expect to enter interstate commerce, which does enter interstate commerce, and because of the alleged defect causes damages to the plaintiff in Oklahoma." *Id.* at 574. In *Metal-Matic*, the manufacturer could reasonably forsee that its boat railing could be used on any navigable lake in the country. In *Winston*, the manufacturer of the mobile home could reasonably expect the product to enter interstate commerce and be moved to Oklahoma. The facts in this controversy are different from those in *Metal- Matic* and *Winston,* as the undisputed facts here establish that the conveyor was designed and constructed to be anchored with bolts to NRI's plant floor and to become a permanent and immovable fixture in NRI's Michigan plant.

Mr. Cato references other "stream of commerce" decisions which are distinguishable because, in each of those cases, it was foreseeable that the products sold would move through the stream of commerce to the forum state. In *Mann v. Frank Hrubetz & Co., Inc.*, 361 So.2d 1021 (Ala. 1978), the defendant was a foreign manufacturer of a carnival ride intended for use in a traveling carnival. Because of the mobile nature of the carnival business, the court found it had personal jurisdiction. *Id.* at 1025. In *Liberty Mutual Ins. Co. v. American Pecco Corp.*, 334 F. Supp. 522 (D.D.C. 1971) suit was brought against the foreign manufacturer of a construction crane sold

6

to an exclusive distributor for resale. The manufacturer knew the distributor did business in the District of Columbia. Unlike *Liberty*, there is no indication here that Continental expected its conveyor to be resold, or that it could anticipate its resale and use in Oklahoma. In *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 948 (8th Cir. 1998), the court held that a foreign manufacturer of a grain elevator speed switch monitor had sufficient contacts with the State of Iowa to permit the exercise of personal jurisdiction. The speed switch monitor had been sold to a regional distributor with the expectation that the distributor would penetrate a discreet, multi-State trade area in the grain elevator market. Under such facts, the foreign manufacturer had "'purposely reaped the benefits' of the laws of each State in that trade area for due process purposes." *Id.* In this case, however, there are no facts indicating that Continental marketed the conveyor through a regional distributor conducting sales in a discrete trade area including Oklahoma. As Justice O'Connor stated in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987), "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state." Justice O'Connor restated the purposeful availment test to require additional conduct "purposefully directed" at the forum state, such as designing a product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor has agreed to serve as the sales agent in the forum State. *Id.*

Continental contends this case is similar to a Utah case in which the plaintiff contended that the sale of a machine to a California buyer placed the machine in the stream of commerce so as to establish sufficient minimum contacts with the state of Utah. In *Arguello v. Industrial Woodworking Machine Co.*, 838 P.2d 1120 (Utah 1992), a Texas machine company sold a large, stationary finger

7

jointing machine to a lumber company in California. Some eleven years later, the machine had made its way to a company in Utah. *Id.* at 1121. The Texas company sold no finger jointing machines in Utah and did not seek to serve the Utah market for finger jointing machines through sales representatives or advertising. The court agreed that the "machine never entered the stream of commerce because it was sold to an ultimate buyer [in California] and resale of the machine in Utah was wholly unforeseeable." *Id.* at 1125. Like the court in *Arguello*, this court concludes that Continental could not have reasonably foreseen that the machine it sold NRI would enter the stream of commerce and arrive in Oklahoma. The machine was designed, manufactured, and sold to be anchored to the floor of NRI's plant with bolts, and was to serve as a permanent and immovable fixture. Continental did not purposefully avail itself of the privilege of doing business in Oklahoma when it sold a conveyor to NRI in Michigan. This court must therefore reject Mr. Cato's "stream of commerce theory" of specific jurisdiction.

It evaluating the issue of specific jurisdiction, this court must also address the fact that Continental sold a separate conveyor to LaFarge Cement Company in Tulsa, Oklahoma in 2005. Plaintiff argues, albeit mistakenly in the portion of his brief addressing *general* jurisdiction, that Continental purposefully availed itself of the privilege of doing business in Oklahoma when it sold a conveyor and replacement parts to Lafarge. Purposeful availment alone, however, is insufficient to establish specific personal jurisdiction. The plaintiff must also make a *prima facie* showing that the alleged injuries arose out of those activities. *Burger King Corp. v. Rudzewicz*, 471, U.S. 462, 472 (1985) (specific jurisdiction exists when "the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities"); MOORE'S FEDERAL PRACTICE §108.42[3][c], p.108-74.3. The Tenth Circuit

8

applied this rule in *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456-57 (10th Cir. 1996). In *Kuenzle*, the plaintiff sued Tyrolia, an Austrian manufacturer of ski bindings, in Wyoming. Although Tyrolia sold its products in the United States through an independent distributor, the plaintiff bought the bindings in Switzerland and brought them to Wyoming herself. The plaintiffs argued that Tyrolia had sufficient contacts with Wyoming through the actions of its employees and an independent distributor. The district court denied Tyrolia's motion to dismiss, holding it had *in personam* jurisdiction over Tyrolia. The Tenth Circuit reversed, stating:

> "Regardless of any contacts that exist between Tyrolia or its independent distributor and the forum, this cause of action for defective bindings and breach of warranty did not arise out of those contacts. . . . the requirement 'that the claim arises out of or results from the forum-related activities, is . . . not satisfied' when the plaintiff 'would have suffered the same injury even if none of the defendant's forum contacts had taken place.'"

*Id.* at 456-57 (citing *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267 (9th Cir. 1995). Because Ms. Kuenzle's accident would have occurred in Wyoming even if Tyrola had made none of the contacts the district court relied upon for personal jurisdiction, the Circuit concluded that the cause of action did not arise out of forum related activities and that the district court did not have specific jurisdiction over Tyrolia. In this case, Mr. Cato's accident would have occurred in Oklahoma even if Continental had not sold a conveyor to LaFarge. The court therefore concludes

that Mr. Cato's cause of action does not arise out of[1] forum related activities, and that Mr. Cato has failed to make a prima facie showing of specific personal jurisdiction over Continental.

**B. General Jurisdiction**

A federal court may exercise general personal jurisdiction over a defendant whose contacts with the forum state are "continuous and systematic" even if the claims did not arise out of and are not related to the defendant's actions in the forum state. *Helicopteros*, 466 U.S. at 415-16. To evaluate whether the defendant's contacts rise to this level, courts examine the following factors:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Kuenzle*, 102 F.3d at 457 (citations omitted).

The undisputed facts establish that Continental does not have an office or agent located in Oklahoma and has never sent any of its agents to Oklahoma to solicit business. Additionally, Continental has not held itself out as doing business in Oklahoma through advertising, bank accounts, addresses, or telephone listings.

---

[1] In *Dudnikov*, the Tenth Circuit mentioned with approval two tests – the "but-for" causation test, and the proximate causation test – to determine whether a plaintiff's alleged injuries "arise out of or relate to" a defendant's forum related activities. The Circuit decided it need not endorse either of the tests, as each produced the same outcome. The same is true here. The sale of the Lafarge conveyor system was neither the "but-for" nor the "proximate cause" of Mr. Cato's injuries.

As previously mentioned, Continental has conducted some business in Oklahoma. In 2005, it sold a conveyor system to Lafarge Cement in Tulsa. Continental subsequently sold Lafarge replacement parts on a few separate occasions, most recently in 2005 and 2008. During its relationship with Lafarge, Continental did not send any representatives to Oklahoma. Aside from Continental's relationship with Lafarge, Mr. Cato does not allege that Continental has engaged in any other business transactions in Oklahoma. Therefore, the business Continental has conducted in Oklahoma is limited to the sale of one machine and replacement parts for that machine. There is nothing to indicate that Continental has conducted any business in Oklahoma since 2008.

Continental's transactions with a single company involving one machine do not rise to the level of "continuous and systematic" contacts with Oklahoma under *Helicopteros*. Therefore, the court concludes it lacks general personal jurisdiction over Continental.

### IV. Conclusion

The court concludes it lacks personal jurisdiction over the defendant Continental. Therefore, Continental's Motion for Summary Judgment (Dkt. #23) is granted, and the case is dismissed.[2]

DATED this 24th day of March, 2011.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

---

[2] Bristow Rubber filed a petition in bankruptcy and the court subsequently entered an Administrative Closing Order as to that defendant on July 14, 2010. (Dkt. #26).